IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                              Case Nos.:    3:08cr20/MCR
                                               3:09cv576/MCR/EMT
AARONEY OKEVIOUS REED

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 83). The Government initially filed a motion to dismiss (doc. 85), which was denied over the Government's objection (docs. 95, 96, 100). It has now filed a response to Defendant's amended motion (doc. 101). Defendant has not filed a reply despite having been afforded time in which to do so (*see* doc. 102). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the § 2255 motion should be denied.

## BACKGROUND

Defendant was charged on February 21, 2008, with two counts of being a convicted felon in possession of a firearm based on events that occurred on October 17 and October 27, 2007 (doc. 1). Defendant was represented by appointed counsel Randall Lockhart of the Federal Public Defender's office. On June 19, 2008, Defendant appeared before the court to enter a guilty plea (docs. 18, 58). After questioning, however, the court determined that a competency evaluation was in order and terminated the proceedings (doc. 58 at 19). Defendant underwent a psychiatric examination after the parties' stipulated motion for the same was granted (docs. 22, 24, 25). The court held a

combined competency and change of plea hearing on December 17, 2008 (docs. 26, 27, 59). The court found Defendant competent to proceed and accepted his plea, which was entered pursuant to a written plea agreement (docs. 28, 29, 59). Relevant portions of the detailed plea proceeding are set forth below.

The Presentence Investigation Report ("PSR") assessed a base offense level of 14 (PSR ¶ 14). Four levels were added pursuant to § 2K2.1(b)(6) due to Defendant's possession of the firearm in connection with another offense (aggravated assault with deadly weapon), and two levels were added due to Defendant's creation of a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement pursuant to § 3C1.2 (PSR ¶¶ 24, 27). Although Defendant's adjusted offense level was 20, his base offense level was ultimately 27 due to the application of §§ 2K2.1(c)(1), 2X1.1, and ultimately, § 2A2.1(a)(2) (PSR ¶ 28). After a three-level adjustment for acceptance of responsibility, his total offense level was 24 (PSR ¶¶ 30, 31). Defendant's criminal history category was VI (PSR ¶ 53). Thus, the applicable advisory guidelines range was 100 to 125 months, with a statutory maximum of ten years on each count.

On March 19, 2009, prior to sentencing, Defendant and his attorney appeared before the court for an ex parte hearing (doc. 57). The hearing was scheduled after the court received something from Defendant that it interpreted as a motion to withdraw his plea (*id.* at 2). Counsel explained to the court that after he became aware of Defendant's correspondence, he went to the jail to talk to him (*id.*; *see also* doc. 101 at 70–71, counsel's March 5, 2009 letter memorializing meeting with client). Counsel stated that Defendant told him he was worried that counsel was not going to respond to the PSR, and that because he had not yet seen counsel he became frustrated and had a jailhouse lawyer draft the actual letter, but that he did not really "stand by the allegations that are contained in it" (doc. 57 at 2–3). Defendant also told counsel that he had no problems with counsel's representation of him and that he did not wish to withdraw his plea (*id.*). Counsel reported that one unfortunate result of Defendant's filing the motion, was that government agents ceased talking to Defendant in furtherance of his cooperation, although counsel hoped that the matter could be relatively easily resolved (*id.* at 3–4). The court placed Defendant under oath and asked him whether counsel's summary was correct (*id.* at 4). Defendant indicated that it was, that he was accepting responsibility

for what he had done and that he still wanted to cooperate with the Government, but he merely had filed the motion as a way of letting the court know that he wanted to object to his PSR (*id.* at 4–5). The court accepted the motion as "having been filed to get someone's attention that [Defendant] needed to meet with Mr. Lockhart," rather than to actually withdraw his guilty plea, and Defendant concurred (*id.* at 5). Defendant was allowed to withdraw the motion, and he apologized to the court (*id*. at 6).

Sentencing was conducted on April 1, 2009. Defendant's total sentence was 144 months, which included a term of 120 months on Count 1 and 120 months on Count 2, with 24 months of the sentence on Count 2 to run consecutive to the sentence on Count 1 and 96 months to run concurrent with the sentence on Count 1 (doc. 60 at 94–95). The court said at sentencing that it had been inclined to impose a sentence of 180 months, but reduced it by somewhat based on the cooperation Defendant had rendered, despite the fact that no substantial assistance motion had been filed (*id*. at 93). Other relevant details of the sentencing proceeding are set forth below.

The clerk filed a notice of appeal in Defendant's behalf (doc. 45, *see also* doc. 60 at 105), as did defense counsel (doc. 46). On September 10, 2009, the Eleventh Circuit dismissed Defendant's appeal with prejudice pursuant to his motion to dismiss, and the mandate issued that same date (doc. 64).

In the present motion,[1] Defendant separates his claims into four grounds for relief. He contends that counsel was constitutionally ineffective, that his plea was coerced, that he suffered from a mental disability, and that the consecutive portion of his sentence was unlawful. The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

<u>General Standard of Review</u>

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United

---

[1] The timeliness of this motion was the subject of a prior report and recommendation by the court after the Government moved to dismiss on this basis (*see* docs. 85, 95, 96, 100).

Case Nos.: 3:08cr20/MCR; 3:09cv576/MCR/EMT

States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981); Hidalgo v. United States, 138 Fed. Appx. 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); Mills v. United States, 36 F.3d at 1055 (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); United States v. Frady, 456 U.S. 152, 165 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."

Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.,* 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Gaskin v. Secretary, Dept. of Corrections, 494 F.3d 997, 1002 (11th Cir. 2007). "Strickland's two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990) (*citing* Hill v. Lockhart, 474 U.S. 52 (1985)); United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001). In applying Strickland, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688; *see also* Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan, 909 F.2d at 477 (citing Harich v. Dugger, 844 F.2d 1464, 1469 (11th Cir. 1988); Dingle, 480 F.3d at 1099; Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance

must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315 (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); United States v. Ross, 147 Fed. Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."

Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

 Defendant's Claims for Relief

1. Grounds One and Two: Ineffective assistance of counsel and Coerced/involuntary plea[2]

---

[2] These two grounds for relief will be discussed together as they are interrelated.

Case Nos.: 3:08cr20/MCR; 3:09cv576/MCR/EMT

In Defendant's first ground for relief, he contends that counsel promised him that by pleading guilty he would receive less than a ten year sentence, while alternatively threatening that by going to trial Defendant would face life in prison (doc. 83 at 3, 7). Defendant alleges that counsel coerced him into pleading guilty, "knowing that [Defendant] wanted to go to trial" (*id*. at 3). In his second ground for relief, Defendant contends that his attorney and the Government "coerced" his plea by leading him to believe he would receive a shorter sentence if he cooperated, and he suggests that he was "promised" a 5K1 motion (*id.* at 3, 7). He further contends that he was "never told the elements of [his] crime."

An allegation of a coerced plea, supported by a factual allegation, can support a §2255 motion. *See* Fontaine v. United States, 411 U.S. 213, 214–15 (1973); United States v. Lampazianie, 251 F.3d 519, 524 (5th Cir. 2001). However, a defendant's statements during a Rule 11 colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Blackledge v. Allison, 431 U.S. 63, 73–74 (1977); *see also* Holmes v. United States, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. Blackledge, 431 U.S. at 73–74; United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) (citing United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987)); United States v. Munguia-Ramirez, 267 Fed. Appx. 894 (11th Cir. 2008).[3] They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice. Blackledge, 431 U.S. at 73–74; United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion . . . include credible, valid reasons why a departure from those earlier contradictory statements is now justified."); *see also* Gonzalez-Mercado, 808 F.2d at 800 n.8 (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true (citing Blackledge and other cases); Downs-Morgan v. United States,

---

[3] The undersigned cites Munguia-Ramirez only as persuasive authority and to show the continued viability of Gonzalez-Mercado, and recognizes that the opinion is not considered binding precedent. *See* 11th Cir. R. 36-2.

765 F.2d 1534, 1541 n.14 (11th Cir. 1985); Potts v. Zant, 638 F.2d 727, 750–51 (5th Cir. 1981) (citing United States v. Sanderson, 595 F.2d 1021 (5th Cir. 1979)). Consequently, a defendant "bears a heavy burden to show his statements [under oath] were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988); United States v. Green, 2008 WL 1923102 (11th Cir. 2008) (Table, text in WESTLAW); United States v. Cardenas, 230 Fed. Appx. 933, 2007 WL 2119918 (11th Cir. 2007) (Table, text in WESTLAW). "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (quoting United States v. Barrett, 514 F.2d 1241, 1243 (5th Cir. 1975)).

Here, the district court conducted an extraordinarily thorough plea colloquy, the transcript of the which rebuts each of the claims set forth above.[4] Relevant portions of the plea colloquy are set forth herein. After preliminary background questions, the court asked Defendant why he was in court and he said to plead guilty to gun charges (doc. 59 at 16). The court asked Defendant whether he understood that he possessed a gun and at the time he was a convicted felon, and that possession of a firearm by a convicted felon was against the law (*id.*). He said that he did, and he further affirmed that he wanted to enter a plea of guilty to that charge (*id.*). He never stated that he wanted to go to trial.

The court told Defendant more than once that up until his guilty plea was accepted, he could change his mind and tell the court he did not want to enter the plea and that the decision about whether to enter a plea was his and his alone (doc. 59 at 20, 21). The court explained at great length the rights Defendant would be waiving by pleading guilty (*id.* at 21-30). Again, at no point did Defendant ever indicate that he wanted to proceed to trial.

The court went over the written plea and cooperation agreement and statement of facts with Defendant, each of which he acknowledged having signed and discussed with counsel (doc. 58 at 30–33). Despite the claims he now makes, Defendant denied that counsel had used any threats or

---

[4] In addition, the court notes that some of these claims appear to mirror the claims raised in the "motion to withdraw," that was the subject of the ex parte hearing, and was ultimately withdrawn (*see* doc. 57; doc. 101 at 66–67 (motion attached to Government's response)). Defense counsel's thorough affidavit and supporting documentation prepared at the time he represented Defendant also refutes Defendant's claims (*see* doc. 101 at 14–33).

Case Nos.: 3:08cr20/MCR; 3:09cv576/MCR/EMT

pressure to try to get him to sign the documents (*id*. at 33). He declined the opportunity to take additional time to review the documents (*id*. at 34). Although the court did not read the plea agreement or statement of facts word for word to Defendant, it specifically queried him on his discussion with his attorney regarding the possible penalties he faced (*id.* at 34). It warned him that depending on whether he had the prior qualifying convictions, he could be deemed an armed career criminal and face a 15-year minimum mandatory sentence and a sentence up to and including life in prison (*id.* at 34–35). Defendant indicated that he understood (*id*. at 35). Without the qualifying convictions, Defendant was told that he faced a maximum of ten years imprisonment (*id.*). The court then specifically clarified that he could receive a sentence in excess of ten years imprisonment because there were two separate penalties to be imposed, and the sentences on the two counts could be imposed consecutively regardless of whether he entered a guilty plea or was convicted after a trial (*id*. at 36). The court asked Defendant if he wanted to speak to counsel at that point, because he looked like he had a question, and also asked whether that changed his desire to plead guilty (*id.* at 37). Defendant indicated that he still wished to proceed with his plea, and he never stated that counsel had promised a particular sentence (*id*.).

The court then discussed the Sentencing Guidelines and the statutory minimums and maximums that could be applicable to Defendant's case (doc. 59 at 38–40). Defendant indicated that he understood (*id*. at 40). When the court explained that the Government would not recommend a particular sentence in his case, the record reflects that Defendant spoke to his attorney, who advised that he was asking about substantial assistance (*id.*). Before discussing that issue, the court advised Defendant that no one could tell him what his sentence was going to be at that time: not the court, the defense attorney, the U.S. Attorney or the probation officer (*id.* at 40–41). The court explained the content and purpose of the Presentence Investigation Report to Defendant (*id.* at 41–42), and in doing so again specifically reiterated that his sentence "is not capable today of being predicted, we can't tell you what it's going to be," and admonished Defendant that he should have "no expectation about what [his] sentence is going to be" because "other than the 15-year minimum mandatory" he "just [did not] know" what the sentence would be (*id.* at 42). Defendant acknowledged his understanding, and again, did not claim that counsel had promised him a particular sentence (*id*.).

The court then explained the possibility and meaning of a substantial assistance motion and emphasized:

> the decision about whether or not to file that motion . . . is entirely up to the Government. I don't play any role in the decision. I mean, listen carefully. I don't play any role in the decision. I cannot force Ms. Eggers to file that motion. I cannot order her to file that motion. Mr. Lockhart plays no role in that decision either.

(Doc. 59 at 43). Defendant stated that he understood that, as well as the fact that his disagreement with the Government's decision not to file the substantial assistance motion would not allow him to withdraw his plea (*id.* at 44). The court specifically stated that Defendant "[does not] have any assurance, promises, regardless of what information [he gives] them, that they are going to file that motion" (*id.*). Again, despite what he now claims, Defendant indicated that he understood (*id.*).

Defendant's assertion that he was never told the elements of his offense is also refuted by the record. With respect to the Government's ability to prove the elements of the offense conduct, the court referred Defendant to page three of the agreement he had signed and told him what it would have to find in order to accept his guilty plea, or alternatively, what the Government would have to prove at trial: that Defendant knowingly possessed a firearm, that before he possessed the firearm it had traveled in interstate commerce, and that he had previously been convicted of a felony (doc. 59 at 45–46). The court also referred Defendant to the signed statement of facts which set forth the facts the Government believed it could prove if the case went to trial, which facts were sufficient to satisfy the legal elements of the charge (*id.* at 47). Defendant asked for a moment to confer with counsel after which he stated that he understood and agreed with what the Government had said he had done (*id.* at 47–48). The following exchange then occurred:

THE COURT: Did you knowingly possess the firearms as charged in this case? It's up to you. Did you – did you knowing possess the firearms as charged in this case?

THE DEFENDANT: Knowingly, no.

THE COURT: You didn't knowingly possess them?

THE DEFENDANT: No.

THE COURT: Mr. Lockhart? Mr. Reed and Mr. Lockhart, we've got to proceed. Mr. Reed, what I need to know from you before I can accept your plea today is whether you've done – and

again, you need to make sure you understand and read these facts – but have you done what the government says you've done here?

    THE DEFENDANT: Yes.

    THE COURT: Do you understand that the facts, as outlined in this statement of facts, show that you actually possessed a firearm on the first occasion and at a minimum, constructively possessed it on a second occasion. In both instances, these facts are sufficient for the Court to find that you knowingly possessed the firearm on both occasions. Do you understand that? That by admitting to these facts, that's what the Court is going to determine in accepting your plea. Because otherwise, I can't accept your plea.

    THE DEFENDANT: Yes.

    THE COURT: I'm sorry. Is that yes?

    THE DEFENDANT: Yes.

    THE COURT: All right.

(*Id.* at 48–49). The court then asked counsel whether they had anything else on the plea or the statement of facts, and Defense counsel indicated that he would like to make a record of the following:

> I actually saw Mr. Reed and went over the plea and cooperation agreement as well as the statement of facts, and we sat together at a table where I went through the agreement with him and read through the statement of facts line by line. And I've also seen him and we discussed this case on the ninth of this month, the eighth, on three different occasions and all day on the fourth of December as well as the third. So I don't want the Court to be under any impression that we've not gone over this to a significant degree. I think Mr. Reed is just having difficulty making up his mind, so I would like to put that on the record.

(Doc. 59 at 49–50). The court told Defendant that he could still change his mind about his plea, up until the point that he said "guilty" and the court accepted the plea, but he indicated that he still wanted to proceed (*id.* at 50). The court explained supervised release, inquired about Defendant's satisfaction with counsel, and told him again that even after the court made its factual findings he could still decline to enter a guilty plea and his case would be set for trial (*id.* at 50–52). Defendant acknowledged his understanding of this and when separately asked how he pleaded to each count of the indictment, he stated "guilty" (*id.* at 52–53). The court accepted his guilty pleas.

In conclusion, Defendant's sworn statements at the plea colloquy utterly and completely rebut his claim that his plea was coerced or somehow involuntary, that he was promised a particular sentence, or that the elements of the offense were never explained to him. He has offered nothing to suggest that his previous sworn statements should be disbelieved, *see*, Blackledge, 431 U.S. at 73–74, and thus there is no basis for relief.

Defendant also contends as part of his first ground for relief that counsel did not object to things Defendant asked him to object to during sentencing. At sentencing, the Government first presented the testimony of an individual that Defendant shot at on October 17, 2007, who explained the events that transpired that day and identified Defendant (doc. 60 at 3–13). Counsel thoroughly cross-examined the witness in an attempt to impeach his recollection of the events and his identification of Defendant (*id.* at 13–27).

The Government also presented the testimony of Officer Sowry, of the Pensacola Police Department ("PPD"), who described the October 27, 2007 incident, where the armed Defendant pursued another vehicle in a threatening manner and then fled from law enforcement vehicles that arrived on the scene (*id.* at 29–35). Again, defense counsel cross-examined the Government's witness (*id.* at 35–39). Officer Parsons, also of the PPD, testified about the car chase and Defendant's apprehension (doc. 60 at 41–55). The video taken from his vehicle was played for the court, and the video and several still photos of a park Defendant had allegedly driven through during the chase were introduced into evidence, as well as tapes of a 911 call and a tape of Officer Sowry "calling" the pursuit. Defense counsel stated an objection to the still photos, asserting that they did not accurately depict the park (*id.* at 49). In support, counsel argued that because there was no testimony about exactly where Defendant had cut through the park, since he had been ahead of the officers and turned off his lights, the photos were not probative (*id.* at 49). Counsel also objected to questions regarding Defendant having bonded out from an incident ten days before this arrest, which objection was sustained (*id.* at 54). On cross-examination, counsel questioned the officer about details of the chase, including the seriousness of the alleged driving transgressions made during the chase (*id.* at 55–60).

After testimony concluded, defense counsel noted he had already met with his client to discuss the PSR and the objections that would be filed (doc. 60 at 63). Defendant concurred that counsel had met with him as counsel had indicated, and did not voice any concerns at that time (*id.*). Counsel noted that Defendant's armed career criminal objection had been resolved (*see* PSR ¶¶ 126–27). Remaining objections involved whether it was proper to cross-reference Defendant to the attempted murder guidelines based on the offense conduct underlying count one (*id.* at 63–70), and whether an adjustment for reckless endangerment (also referred to during the proceedings as the obstruction of justice adjustment (*see* U.S.S.G. § 3C1.2)) was warranted (*id.* at 70–71). The court overruled each of these, noting that it would have agreed with counsel as to the application of the attempted murder guideline but for the fact that the evidence showed that Defendant fired not one but three shots in the actual direction of the fleeing victim (*id.* at 73–74). The court also overruled an objection to the obstruction adjustment based on Defendant's conduct during flight from law enforcement at the time of the offense conduct underlying Count 2 (*id.* at 75).

After the court ruled on the defense objections, Counsel addressed the court, setting forth Defendant's troubled background as a latchkey child and asking the court to take into account the totality of Defendant's personal circumstances in sentencing (doc. 60 at 75–80). Counsel also noted that despite Defendant's efforts, a 5K1 motion would not be forthcoming, and that the question of whether Defendant would be eligible for a subsequent reduction was undetermined at that time (*id.* at 80). As noted above, the court's ultimate sentence took into account Defendant's attempts at cooperation, even though the Government had not filed a 5K1 motion (*id.* at 93). After the court imposed sentence, counsel reminded the court about pending state charges and asked whether the court would consider running Defendant's state[5] and federal sentences concurrently (*id.* at 99). The court commended counsel for making a good point and noted that it had been "wise" of him to raise it at that time, because if it were not, it could be a problem for Defendant down the road (*id.*). It then articulated its intent that the sentence imposed in this case run concurrent to any sentence imposed in two state court cases dealing with the identical offense conduct, or that Defendant receive credit

---

[5] At sentencing, Defendant still had pending state charges arising out of the same offense conduct giving rise to the indictment in this case.

Case Nos.: 3:08cr20/MCR; 3:09cv576/MCR/EMT

for time served in state custody on those charges only toward his federal sentence (*id.* at 99–105). Before the proceedings concluded, counsel stated he wished to withdraw his statement that he did not have a specific request for a designation, and that Defendant wanted a designation to an FMC where he could receive more intensive mental health treatment (*id.* at 106). Counsel even asked whether a request that Defendant be transferred to an FMC for further evaluation could be made part of the judgment (*id*. at 107). The court stated it had never designated someone to a medical center for service of his or her sentence, noted that it was limited to strongly recommending that the BOP evaluate Defendant and review information compiled by the FCC in Miami and make their designation decision based on that information, and stated that the court's recommendation would be part of the judgment (*id.*).

As the record reflects, clearly, counsel was a vocal advocate for his client and did not sit passively during the proceedings, but rather made appropriate objections and brought important matters to the court's attention. In his motion criticizing counsel's performance, Defendant fails to identify a single objection that he claims counsel should have made in his behalf. His bare conclusory allegations are insufficient to establish ineffective assistance of counsel, particularly after this court's review of the record, and he has shown no deficiency in counsel's performance.

Defendant's his first two claims are frivolous and he is not entitled to relief.

2.  Ground Three: Mental Problems

Defendant appears to contend in ground three that his sentence should be vacated because of his "mental disability" or "mental problems" (doc. 83 at 4). The court was aware of Defendant's history of "mental problems," and as noted above, declined to accept his initial attempt at entering a guilty plea and instead ordered a competency evaluation. The evaluation concluded that while Defendant had some mental health issues, he was competent at the time of the evaluation and at the time of the offense conduct. The evaluation report contained the observation that during testing Defendant attempted to exaggerate the extent of his supposed psychological and intellectual shortcomings, except when it suited him otherwise, and that despite his claimed issues, staff observed that he exhibited no difficulties in communications, interactions or any other activities related to daily living in the inpatient unit (doc. 25 at 8, 10, 11).

Based on the findings contained within the report, the parties stipulated to Defendant's competency at the time of his plea (doc. 59 at 2–3).  The court questioned Defendant in detail about his medications and offered him the opportunity to return to enter his plea on a day in which he had been able to take his medications, but Defendant declined, stating he was "still going to plead guilty" and that he was "all ready to plead" (*id.* at 18, 19).  Defendant's competency is further substantiated by counsel's affidavit and his notes taken contemporaneously with the events in which he concludes that he had "no doubt" that Defendant understood his case (*see, e.g.,* doc. 101 at 16, 33).  Defendant's self-serving representation that he was "not in right state of mind during plea" (doc. 83 at 8) is unsupported by the record, and he is not entitled to relief.

3.  Ground Four:  Consecutive v. Concurrent Sentence

Defendant contends that his sentences should not have run consecutively to each other, essentially claiming that such a harsh sentence was not "warranted" (doc. 83 at 8).  Defendant's challenge to his sentence is a claim that could have been resolved on direct appeal.  His voluntary dismissal of his appeal thus resulted in this claim being procedurally barred.  *See* Lynn, 365 F.3d at 1234–35; Bousley, 523 U.S. at 621; Mills v. United States, 36 F.3d at 1055.  Furthermore, the record reflects that the district court explained to Defendant before he entered his guilty plea that consecutive sentences of up to ten years on each of the two charges was a possibility (doc. 59 at 36–37).  Neither Defendant's belief that such a harsh sentence was not warranted nor his dissatisfaction with the sentence imposed entitles him to relief, a fact about which he was previously warned (*id.* at 42).

**Certificate of Appealability**

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595,

1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The amended motion to vacate, set aside, or correct sentence (doc. 83) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 15th day of June 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* **28 U.S.C. § 636;** <u>United States v. Roberts</u>**, 858 F.2d 698, 701 (11th Cir. 1988).**